# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNITED STATES OF AMERICA    )
    )
v.    )    Criminal No. 3:13CR97–HEH
    )
ANTHONY T. CHAMPION,    )
    )
    Petitioner.    )

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2255 Motion)

Anthony T. Champion, a federal inmate proceeding *pro se*, submitted this motion

under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion,"

ECF No. 65).[1] Champion contends that he received ineffective assistance of counsel.[2]

Specifically, Champion argues that he is entitled to relief on the following grounds:[3]

| | |
|---|---|
| Claim One | Counsel rendered ineffective assistance because "[c]ounsel failed to take notice of the fact that the trial proceedings were over the time period limit under the Speedy Trial Act." (§ 2255 Mot. 4.) |
| Claim Two | Counsel rendered ineffective assistance "at the plea stage of the trial proceedings" because Champion "would not have pled guilty if not for Counselor [Peluso's] threats and intimidations." (*Id.*) |

---

[1] The Court corrects the capitalization and punctuation in the quotations from Champion's submissions. The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[3] The Court employs the pagination assigned to Champion's submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Champion's submissions.

| Claim Three | Counsel rendered ineffective assistance because counsel failed "to perfect a defense" by refusing to "view the videotape" that "affirmed [a] defense of not guilty." (*Id.*) |
|---|---|
| Claim Four | Counsel rendered ineffective assistance "at the direct appeal stage by not objecting to all errors." (*Id.* at 5.) |
| Claim Five | Counsel rendered ineffective assistance "as to the weapons possession" charges because "[t]he weapons were found in the trunk and not in close proximity of [Champion]." (*Id.* at 7.) |
| Claim Six | Counsel rendered ineffective assistance "for allowing a federal prosecution when the sole subject matter was state and premised on a traffic stop under state law." (*Id.*) |
| Claim Seven | Counsel rendered ineffective assistance "as to the search of the vehicle's trunk." (*Id.*) |
| Claim Eight | Counsel rendered ineffective assistance "under federal law's *Terry*[4] stop decision" because "[u]nder federal law there is no violation contained within any statute that makes it a crime to wrap an air freshener around the rearview mirror to eliminate odor." (*Id.* at 8.) |

The Government responded, asserting that Champion's claims lack merit. (ECF

No. 71.)[5] Champion filed a Reply.[6] (ECF No. 72.) For the reasons set forth below,

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

[5] The Government filed two identical response briefs, the second of which includes an attached exhibit. (ECF Nos. 70, 71; *see* ECF No. 71–1.) When citing the Government's Response, the Court includes citations to the second-filed Response (ECF No. 71) because it includes the attached exhibit (ECF No. 71–1), which was not submitted with the first response brief. (*See* ECF No. 70.)

[6] Although Champion's Reply is entitled "Pursuant to Fed. R. Civ. P. 15(D)," Champion failed to request leave of Court to supplement his initial pleading. *See* Fed. R. Civ. P. 15(d). Accordingly, to the extent that Champion seeks to add vague new claims in his Reply, the Court notes that Champion may not do so by a passing reference in this filing. *See Snyder v. United States*, 263 F. App'x 778, 779–80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *E.I. du Pont de*

Champion's § 2255 Motion (ECF No. 65) will be denied.

## I. PROCEDURAL HISTORY

On June 4, 2013, a grand jury charged Champion with possession of a firearm by a convicted felon (Count One), transportation and shipment of stolen firearms in interstate and foreign commerce (Count Two), and possession of a firearm "which had had the importer's or manufacturere's serial number removed, obliterated, and altered and which had been shipped and transported in interstate and foreign commerce" (Count Three). (Indictment 1–2, ECF No. 1.)

On August 19, 2013, Champion, proceeding with counsel, filed a Motion to Suppress, requesting that the Court "suppress all evidence seized and statements made as a result of the illegal traffic stop which occurred on January 31, 2013." (ECF No. 12, at 1.) On September 24, 2013, the Court held a hearing on the Motion to Suppress. (*See* ECF No. 16.) By Memorandum Opinion and Order entered on October 17, 2013, the Court denied the Motion to Suppress, concluding that "[t]he Trooper had probable cause to search the vehicle to determine if there was additional marijuana in the car. That probable cause covered the entire vehicle, including the trunk. Therefore, the troopers lawfully observed and seized the firearm." (ECF No. 17, at 5; ECF No. 18.)

On October 29, 3013, Champion filed a letter motion to appoint new counsel (ECF No. 19, at 1), and on October 31, 2013, Champion filed a second letter motion to appoint

*Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Thus, to the extent that Champion seeks to add any vague, new claims in his Reply, the new claims will receive no further consideration in this action.

new counsel (ECF No. 20, at 1). Subsequently, on October 31, 2013, counsel, Elizabeth W. Hanes, filed a Motion to Withdraw as Counsel and for the Appointment of Substitute Counsel. (ECF No. 21, at 1–2.) By Order entered on November 5, 2013, the Court granted Ms. Hanes's motion, and directed the Clerk to appoint new counsel to assist Champion. (ECF No. 22, at 1.) Joseph R. Peluso, Jr., was appointed as counsel. (ECF No. 23, at 1.)

On November 19, 2013, Champion filed a *pro se* letter motion, entitled "Motion for Dismissal of All Charges." (ECF No. 30.) By Order entered on November 20, 2013, the Court denied the motion without prejudice, explaining that "[a]s a Defendant that is represented by counsel, Champion must file motions through his court-appointed attorney or, in the alternative, proceed *pro se*." (ECF No. 31, at 1.)

On November 25, 2013, Champion, proceeding *pro se* with counsel on standby, pled guilty to Count Two of the Indictment. (Plea Agreement ¶ 1, ECF No. 36; *see* ECF No. 35, at 1.) In the Plea Agreement, Champion agreed that he was pleading guilty because he was "in fact, guilty of the charged offense," "admit[ted] the facts set forth in the statement of facts filed with this plea agreement[,] and agree[d] that those facts establish guilt of the offense charged beyond a reasonable doubt." (Plea Agreement ¶ 3.) Champion also agreed that "[t]he maximum penalties for this offense are a term of imprisonment for ten years, a fine of $250,000, a special assessment, and up to three years of supervised release" (*id.* ¶ 1), and "that the Court has jurisdiction and authority to impose any sentence within the statutory maximum . . . ." (*Id.* ¶ 5.)

Further, the Plea Agreement provided that "[t]he United States makes no promise or representation concerning what sentence the defendant will receive . . . ." (*Id.*) Champion agreed that he understood that he was waiving his right to appeal his conviction and "any sentence within the statutory maximum described above (or the manner in which that sentence was determined) . . . ." (*Id.* ¶ 6.) "As a condition of the execution of [the Plea Agreement] and the Court's acceptance of [Champion's] plea of guilty, the United States [agreed to] move to dismiss the remaining counts of the indictment against [Champion]." (*Id.* ¶ 10.)

In the accompanying Statement of Facts, Champion agreed that the following facts were true and correct:

> 1. On or about January 31, 2013, in the Eastern District of Virginia and within the jurisdiction of this Court, ANTHONY T. CHAMPION did knowingly and unlawfully transport and ship in interstate and foreign commerce stolen firearms, to wit: an HS Products .40 caliber semi-automatic pistol, model XD40, serial number US385578, knowing and having reasonable cause to believe that the firearms were stolen.
> (In violation of Title 18, United States Code, Section 922(l)).
> 2. On January 31, 2013, defendant Champion was traveling northbound on Interstate 95 from Georgia to Boston when he was [word omitted by agreement of the parties] stopped by a Virginia State trooper in the vicinity of milepost 100. During the ensuing encounter, the trooper [word omitted by agreement of the parties] searched the trunk of the vehicle defendant was operating and recovered a Taurus .380 caliber semi-automatic pistol, model PT738 TCP, serial number 46457B; a Colt .38 Special caliber revolver, model Detective Special, serial number B54227; a Haskell .45 caliber semi-automatic pistol, model JHP45, serial number X497011; a Charter Arms .38 Special caliber revolver, model Undercover, serial number 221885; an RG Industries .38 Special caliber revolver, model 39, serial number X017281; an HS Products .40 caliber semi-automatic pistol, model XD40, serial number US385578; a High Point 9mm semi-automatic pistol, model C9, serial number 1647499; a Ruger .44 caliber revolver, model Super Black Hawk, serial number 86–03594; and an

Intratec 9mm semi-automatic pistol, model TecDC 9, with an obliterated serial number.

  3.  Each of the guns listed in paragraph 2 was, at the time, a "firearm" as defined in 18 U.S.C. §§ 921 and 922 (I), and each had previously traveled in and affected interstate commerce in that each firearm was manufactured outside the Commonwealth of Virginia and defendant transported each firearm into the Commonwealth of Virginia on or about January 31, 2013.

  4.  Defendant knowingly and unlawfully possessed each of the nine firearms listed in paragraph 2.

  5.  The HS Products .40 caliber semi-automatic pistol, model XD40, serial number US385578 firearm was stolen from Phoenix City, Alabama.

  6.  [Paragraph omitted by agreement of the parties.]

  7.  Defendant was not lawfully permitted to possess any of the firearms listed in paragraph 2 as, prior to January 31, 2013, he had been convicted of a crime punishable by imprisonment for a term exceeding one year. His rights had not been restored, and he was, on January 31, 2013, prohibited by federal law from possessing a firearm.

(Statement of Facts ¶¶ 1–7, ECF No. 37.)

During the Rule 11 proceedings on November 25, 2013, prior to accepting Champion's guilty plea, the Court conducted a thorough examination of Champion regarding his decision to proceed *pro se*. (*See, e.g.*, Nov. 25, 2013 Tr. 3–9, ECF No. 68.) In conducting this examination, the Court summarized Champion's complaints regarding his counsel as follows:

> Now, what I am hearing from you is that, and I've heard it from you before, is that you don't like the fact that the lawyers come and they tell you what any lawyer assigned to you is going to tell you: "These are your options and this is what you are looking at. And I'm calculating, based on my education and training, that this is your best option."

(Nov. 25, 2013 Tr. 6–7.) The Court then outlined "the essential terms" of the Plea Agreement, and Champion confirmed his understanding of the charge to which he was pleading guilty and the penalties for the charge. (Nov. 25, 2013 Tr. 9–12.) Champion

agreed that "to the best of [his] knowledge what's contained in [the] Statement of Facts [was] true and accurate." (Nov. 25, 2013 Tr. 12.) When asked if "anyone [had] promised [him] anything other than what's contained in [the] written Plea Agreement to get [him] to plead guilty," Champion responded: "No, sir." (Nov. 25, 2013 Tr. 11.) Further, when asked if "anyone [had] attempted in any way to force [him] to plead guilty," Champion responded: "No, sir." (Nov. 25, 2013 Tr. 11.) Champion agreed that he was pleading guilty "because in [his] own mind [he] [was] in fact guilty as charged in Count Two of [the] [I]ndictment." (Nov. 25, 2013 Tr. 11.)

The Court explained that Champion's maximum sentence was ten years of incarceration and that the exact sentence would depend upon the sentencing guidelines and Champion's criminal history. (Nov. 25, 2013 Tr. 11, 13–14.) Champion agreed that he understood that, at this point, any estimated sentences were predictions not promises. (Nov. 25, 2013 Tr. 13–14.) The Court accepted Champion's guilty plea, finding that it was knowing and voluntary, and supported by an independent basis of fact. (Nov. 25, 2013 Tr. 15.) After the Court accepted Champion's guilty plea, Champion requested new counsel "to help [him] with [his] Sentencing Guidelines." (Nov. 25, 2013 Tr. 16.)

Prior to Champion's sentencing hearing, Mr. Peluso, who had served as standby counsel during the Rule 11 proceedings in which Champion proceeded *pro se*, filed a Motion for New Counsel or, In the Alternative, to Proceed *Pro Se*. (ECF No. 39, at 1–2.) By Order entered on December 9, 2013, the Court granted the motion, and directed the clerk to appoint new counsel "to assist [Champion] in the remaining proceedings in the

case presently before the Court." (ECF No. 40, at 1.) John S. Davis, V, was appointed as counsel. (ECF No. 41, at 1.)

After Champion's guilty plea and the appointment of new counsel, a Pre-Sentence Investigation Report ("PSR") was prepared. (PSR, ECF No. 44.) With a three-point reduction for acceptance of responsibility (*id.* ¶¶ 18–19), Champion's total offense level was 26. (*Id.* ¶ 73.) Based on Champion's prior convictions, he received a total of 14 criminal history points (PSR Addendum A–1), and his criminal history placed him in Criminal History Category VI. (PSR ¶ 74.) Champion's sentencing guidelines range was 120 to 150 months of incarceration. (PSR Wkst. D, at 1.) However, Count Two carried a restricted statutory maximum of 120 months of incarceration. (*Id.*)

On February 18, 2014, the Court entered judgment against Champion and sentenced him to a total of 120 months of imprisonment. (J. 2, ECF No. 51.) Champion, through counsel, filed a Notice of Appeal. (ECF Nos. 53, 54.) On appeal, Champion argued that "the denial of his motion to suppress evidence from the vehicle search was erroneous because the mere odor of burnt marijuana in the passenger compartment is insufficient to establish probable cause to search the trunk of a car." *United States v. Champion*, 609 F. App'x 122, 122 (4th Cir. 2015). The United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment, holding "that the district court did not err in finding there existed probable cause to search the trunk of the car." *Id.* at 125. The Fourth Circuit held:

> . . . . Here, several factors in the aggregate amounted to probable cause for the troopers to believe that contraband existed generally within the car, including the trunk.

First, the strong odor of marijuana is the most obvious factor supporting a finding of probable cause. *See United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place. . . . While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is."). Trooper Treakle's undisputed testimony that he recognized the "strong odor" of marijuana immediately upon his approach to the vehicle, coupled with Champion's tantalizingly ambiguous response to his inquiry whether there was contraband in the car ("none that I know of") provide compelling evidence that it was reasonable for him to conclude that there was a "fair probability" that marijuana (or other contraband) was located generally within the car. *See [United States v.] Kelly*, 592 F.3d [586,] 592 [(4th Cir. 2010)].

Second, Ms. Wyatt's admission that the occupants of the car had been smoking "weed" while driving on the highway further supports the conclusion that the troopers had probable cause to search the trunk, and not just the passenger compartment, for contraband. This admission is especially important here because of the temporal element: the passenger admitted that the occupants had been smoking "weed" while on the highway on which they were pulled over. Thus, the admission established a fair probability that contraband, specifically marijuana, was present in the car *at the time* it was pulled over. And, since even personal use quantities of marijuana can be stored in a trunk, there was a fair probability that marijuana would be found in the trunk. *See United States v. Turner*, 119 F.3d 18, 20–21 (D.C. Cir. 1997) (rejecting defendant's argument that evidence of personal use of marijuana is insufficient to support a finding of probable cause to search the trunk of the car and collecting cases in which police officers were justified in searching the trunk of cars after finding evidence of marijuana use).

Finally, the occupants' inconsistent answers as to their travel plans also contribute to a finding of probable cause to search the trunk for contraband insofar as the inconsistencies supported an inference of ongoing criminal activity. *See United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012) (finding that a defendant's "uncertainty and confusion about his destination" supported a finding that probable cause existed to search his car for contraband); *United States v. Guevara*, 731 F.3d 824, 831 (8th Cir. 2013) (affirming a finding of probable cause to search a car in part on the basis that the defendant and her sister "gave inconsistent answers about which relative they were going to visit, and neither of them knew the address of their final destination").

In sum, a reasonable law enforcement officer could conclude on this record that (1) the inconsistencies in the accounts of the occupants' journey,

combined with (2) the strong odor of marijuana, (3) the admission that the occupants smoked marijuana in the car during the trip, and (4) Champion's apparent "uncertainty" whether there was contraband in the vehicle he himself was driving (allegedly all the way to Boston from Virginia) were, in the aggregate, indicative of criminal activity, such as (but not necessarily limited to) distribution or possession of illegal narcotics. As such, there was probable cause to search the trunk, as both distribution and possession quantities of narcotics can be found in the trunk of a car. Thus, in light of the totality of the circumstances, there was a fair probability that the car contained contraband and that it was stored in the trunk. It follows that the district court correctly denied the motion to suppress the firearms discovered during a lawful search of the vehicle by the troopers.

*Id.* at 125–26. Further, the Fourth Circuit explained that "the district court's determination of probable cause relied on more than the mere odor of marijuana," *id.* at 124–25, and "[b]ecause the record reveals other facts which amply support a finding of probable cause, this case does not necessitate resolving the more difficult question that the parties present [regarding whether the mere odor of marijuana establishes probable cause to search the trunk of a car]." *Id.* at 125. Thereafter, the Court received the instant § 2255 Motion. (Mot. 1.)

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component

requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Champion that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70.

In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong

presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Champion's prior sworn statements as other than truthful.

## A. Claim One

In Claim One, Champion contends that he received ineffective assistance of counsel because "[c]ounsel failed to take notice of the fact that the trial proceedings were over the time period limit under the Speedy Trial Act." (§ 2255 Mot. 4.) In his § 2255 Motion, Champion does not specify whether he faults each of his attorneys for failing "to take notice" of the speedy trial violation, or whether he faults a specific attorney. (*See id.*) In his Reply, Champion indicates that he faults Ms. Hanes for failing to raise this issue. (Reply 4–5.)

The Speedy Trial Act, provides in pertinent part that:

**(b)** Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on

which such individual was arrested or served with a summons in connection with such charges. . . .

(c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. . . .

. . . .

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--

. . . .

(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

18 U.S.C. § 3161. The record reflects that Champion was indicted on June 4, 2013 (ECF No. 1), and he had his initial appearance in this matter on July 18, 2013. (*See* ECF No. 5.) The limitations period under the Speedy Trial Act commenced as of the date of Champion's initial appearance. *See* 18 U.S.C. § 3161(c)(1).

The speedy trial clock ran for thirty-two days until Champion filed a Motion to Suppress on August 19, 2013. (*See* ECF No. 12.) On October 17, 2013, the Court denied the Motion to Suppress, and at that time, the speedy trial clock began to run again. (*See* ECF Nos. 17, 18.) The speedy trial clock then ran for twelve days until Champion filed a letter motion to appoint new counsel on October 29, 2013. (*See* ECF No. 19.) Two days later, on October 31, 2013, Champion filed a second letter motion to appoint counsel (ECF No. 20), and later that same day, counsel filed a Motion to Withdraw as Counsel and for the Appointment of Substitute Counsel (ECF No. 21). On November 5,

13

2013, the Court granted counsel's motion, and directed the clerk to appoint new counsel to assist Champion. (ECF No. 22.) The speedy trial clock then ran for twenty days until the Court accepted Champion's guilty plea on November 25, 2013. (*See* ECF No. 35.) Therefore, the speedy trial clock ran for a total of sixty-four days before Champion pled guilty, which is within the seventy-day limitations period set forth in the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1). Thus, counsel reasonably eschewed pursuing Champion's Speedy Trial Act claim because no violation of the seventy-day period set forth in 18 U.S.C. § 3161(c)(1) occurred, and such claim lacked merit.

Champion also tersely suggests that his constitutional right to a speedy trial was violated. Champion cites to the Fourth Amendment as the basis for this claim. (§ 2255 Mot. 4.) However, such claim is properly considered under the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

The Sixth Amendment right to a speedy trial "does not attach until the defendant has been indicted or arrested." *Jones v. Angelone*, 94 F.3d 900, 906 n.6 (4th Cir. 1996) (citations omitted). If the right has been triggered, the Court then considers the following four factors: "(1) the length of the delay; (2) the reason for the delay;" (3) the defendant's diligence in asserting the speedy trial right; and, (4) any prejudice to the defendant resulting from the delay. *United States v. Thomas*, 305 F. App'x 960, 963 (4th Cir. 2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). As discussed below, counsel reasonably eschewed making a speedy trial motion as none of these factors tip in Champion's favor.

With respect to the length of delay, "only an arrest or indictment on *federal* charges starts the speedy trial clock." *United States v. Harris*, 551 F. App'x 699, 704 (4th Cir. 2014) (citations omitted). Champion's Sixth Amendment speedy trial right attached on June 4, 2013, when the grand jury returned the Indictment against him. (Indictment 1.) Champion was adjudged guilty of Count Two after he pled guilty on November 25, 2013. (*See* ECF No. 35.) The delay that Champion complains of here was approximately five months and twenty-one days, and that alone fails to trigger the other factors enumerated in *Barker*. *See Thomas*, 305 F. App'x at 963–64 ("[A] seven-month delay was 'entirely too short to trigger further inquiry under *Barker*[, 407 U.S. at 530].'" (quoting *United States v. MacDonald*, 635 F.2d 1115, 1117 (4th Cir. 1980) (some internal quotation marks omitted)). Moreover, even considering the other factors, the record does not establish a speedy trial violation. The delay was caused primarily by the filing of various motions by Champion, including a Motion to Suppress and several motions requesting the appointment of new counsel. Finally, Champion has not demonstrated any prejudice from the delay. Therefore, Champion fails to demonstrate any deficiency or resulting prejudice from counsel's failure to raise a Sixth Amendment speedy trial challenge.

Thus, because Champion's claim regarding a speedy trial violation under either the Speedy Trial Act or the Sixth Amendment lacks merit, counsel reasonably eschewed the challenge Champion urges here and counsel cannot be faulted for failing to raise a meritless argument. *See Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996) (explaining that "[f]ailure to raise a meritless argument can never amount to ineffective

assistance"). Furthermore, Champion fails to demonstrate that counsel's inaction regarding this meritless argument resulted in any deficiency of counsel or resulting prejudice. *See Strickland*, 466 U.S. at 687, 691; *see also Hill*, 474 U.S. at 59. Accordingly, Claim One will be dismissed.

## B. Claim Two

In Claim Two, Champion contends that counsel rendered ineffective assistance "at the plea stage of the trial proceedings" because Champion "would not have pled guilty if not for Counselor [Peluso's] threats and intimidations." (§ 2255 Mot. 4.) Champion asserts that "Mr. [Peluso] brought the district attorney and his agent to the jail [to] question[] Champion," and "[a]t all times, [Champion] felt like he was being threatened and intimidated so he took the plea." (*Id.*)

Champion's present allegations regarding the voluntariness of his guilty plea are contrary to his sworn statements during the Rule 11 plea colloquy. Champion's Plea Agreement also undercuts Champion's present allegations regarding the circumstances surrounding his decision to plead guilty. Specifically, prior to accepting Champion's guilty plea, the Court conducted a thorough examination of Champion regarding his decision to proceed *pro se*. (*See, e.g.*, Nov. 25, 2013 Tr. 3–9.) In conducting this examination, the Court summarized Champion's complaints regarding his counsel as follows:

> Now, what I am hearing from you is that, and I've heard it from you
> before, is that you don't like the fact that the lawyers come and they tell
> you what any lawyer assigned to you is going to tell you: "These are your
> options and this is what you are looking at. And I'm calculating, based on
> my education and training, that this is your best option."

(Nov. 25, 2013 Tr. 6–7.)

Further, during the Rule 11 plea colloquy, when asked if "anyone [had] attempted

in any way to force [him] to plead guilty," Champion responded: "No, sir." (Nov. 25,

2013 Tr. 11.) Further, Champion agreed that he was pleading guilty "because in [his]

own mind [he] [was] in fact guilty as charged in Count Two of [the] [I]ndictment." (Nov.

25, 2013 Tr. 11.) Additionally, in the Plea Agreement, Champion agreed that he was

pleading guilty because he was "in fact, guilty of the charged offense," "admit[ted] the

facts set forth in the statement of facts filed with this plea agreement[,] and agree[d] that

those facts establish guilt of the offense charged beyond a reasonable doubt." (Plea

Agreement ¶ 3.)

In light of Champion's sworn statements during the Rule 11 proceedings, absent

extraordinary circumstances, Champion's instant statements to the contrary are "palpably

incredible." *Lemaster*, 403 F.3d at 222 (citation omitted); *see Escamilla v. Jungwirth*,

426 F.3d 868, 870 (7th Cir. 2005) (citations omitted) ("It is difficult to see how a

collateral attack based on the proposition that the petitioner's own trial testimony was a

pack of lies has any prospect of success. Litigants must live with the stories that they tell

under oath."), *abrogated on other grounds by McQuiggin v. Perkins*, 569 U.S. 383, 397

(2013). Champion fails to demonstrate any such extraordinary circumstances. *See*

*Lemaster*, 403 F.3d at 221–22 (citations omitted) (explaining that "extraordinary

circumstances" may exist if a "petitioner introduce[s] documentary evidence supporting his claim that he was severely ill, both physically and mentally, and uncounselled at the time of his Rule 11 colloquy"). Because Champion fails to demonstrate any extraordinary circumstances, "the truth of [his] sworn statements made during [the] Rule 11 colloquy is conclusively established." *Id.* at 222. For this reason alone, Claim Two can be dismissed.

Champion also fails to demonstrate any prejudice under *Strickland.* To establish prejudice, Champion must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "To determine [Champion's] reasonable likelihood of going to trial, [the Court] must look to the strength of the [Government's] case 'inasmuch as a reasonable defendant would surely take it into account.'" *United States v. Swaby*, 855 F.3d 233, 243 (4th Cir. 2017) (citation omitted). Champion must show that a decision to proceed to trial "would have been rational under the circumstances." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). "[Champion's] subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Id.* (citation omitted).

Here, the evidence of Champion's guilt is overwhelming. Therefore, it is not reasonably likely that a defendant, such as Champion, would have rationally proceeded to trial. Specifically, on January 31, 2013, while traveling from Georgia to Boston, Champion, a convicted felon who was not permitted to possess firearms, was stopped by a Virginia State trooper. During this traffic stop, based on several factors, including the

odor of marijuana emanating from the vehicle, the admission of one of the other occupants of the vehicle that the occupants had smoked marijuana while driving, and the inconsistent answers provided by the occupants regarding their travel plans, the Virginia State troopers had probable cause to believe that contraband was in the vehicle, including in the trunk. Upon searching the trunk of the vehicle, the Virginia State troopers recovered several firearms, of which at least one was stolen and one had an obliterated serial number. Based on this overwhelming evidence of guilt, a rational defendant would not have risked proceeding to trial. *See Fugit*, 703 F.3d at 260–61 ("[P]roceeding to trial would have been irrational where defendant 'faced overwhelming evidence of her guilt' and 'had no rational defense, would have been convicted and would have faced a longer term of incarceration.'" (quoting *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012))).

Furthermore, as part of Champion's Plea Agreement, the Government agreed to "move to dismiss the remaining counts of the indictment against [Champion]." (Plea Agreement ¶ 10.) Therefore, by pleading guilty to Count Two, with respect to Champion's sentence, he received the benefit of the dismissal of the remaining two counts of the three-count Indictment. Champion's sworn statements, coupled with the Government's evidence and the tangible benefit received by Champion, belies any reasonable probability that Champion "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Thus, Champion has failed to demonstrate any deficiency of counsel or resulting prejudice with respect Champion's decision to plead guilty. *See Strickland*, 466 U.S. at 687, 691; *see also Hill*, 474 U.S. at 59. Accordingly, Claim Two will be dismissed.

### C. Claim Three

In Claim Three, Champion contends that counsel rendered ineffective assistance because counsel failed "to perfect a defense" by refusing to "view the videotape." (§ 2255 Mot. 4.) Champion explains that "[he] felt like if counsel [had] reviewed the tape, [it] affirmed [a] defense of not guilty." (*Id.*) Champion does not provide any additional information regarding the specific videotape at issue nor does he describe the contents of the videotape. (*See id.*)

As an initial matter, Champion's terse and conclusory allegations regarding counsel's failure "to perfect a defense" by refusing to "view the videotape" (*id.*), fail to demonstrate deficient performance or prejudice under *Strickland. Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"); *cf. Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (explaining that petitioner's failure to allege "what an adequate investigation would have revealed or what . . . witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim).

The Court notes that the Government played a video of the traffic stop at the hearing on Champion's Motion to Suppress. (*See* Sept. 24, 2013 Tr. 22, ECF No. 57.) However, rather than bolstering any potential defense by Champion, this video depicts

20

the traffic stop of the vehicle driven by Champion and depicts the recovery of the guns from the trunk of this vehicle. (*See* Sept. 24, 2013 Tr. 24–26.) Based on the evidence presented at the hearing, including this video, the Court denied Champion's Motion to Suppress, concluding that the Virginia State troopers had probable cause to search the vehicle, including the trunk, which resulted in the recovery of the firearms.[7] (ECF No. 17, at 5.) Champion fails to direct the Court to any evidence to support his vague assertions that the videotape would have "affirmed [a] defense of not guilty." (§ 2255 Mot. 4); *see Sanders*, 373 U.S. at 19.

Therefore, Champion has failed to demonstrate any deficiency of counsel or resulting prejudice with respect to counsel's decisions about whether "to view the videotape." (*See* § 2255 Mot. 4); *see also Strickland*, 466 U.S. at 687, 691. Accordingly, Claim Three will be dismissed.

### D.  Claim Four

In Claim Four, Champion argues that counsel was ineffective "at the direct appeal stage by not objecting to all errors." (§ 2255 Mot. 5.) Although Champion contends that appellate counsel failed to object "to all errors," Champion only identifies one such error that appellate counsel failed to raise. (*Id.*) Specifically, Champion contends that in the PSR, his "criminal history points were calculated wrong," and appellate counsel failed to raise this error on direct appeal. (*Id.*)

---

[7] The Fourth Circuit subsequently affirmed this Court's judgment. *United States v. Champion*, 609 F. App'x 122, 126 (4th Cir. 2015).

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Id.* (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Here, Champion fails to identify any specific errors regarding the calculation of his criminal history points. Instead, Champion offers nothing more than vague, unsupported assertions that his criminal history points "were calculated wrong" and that appellate counsel was ineffective for failing to raise this issue on direct appeal. (§ 2255 Mot. 5.) Such vague, unsupported allegations fail to demonstrate that the issue Champion raises here was a clearly stronger argument than those issues counsel chose to pursue on appeal. Thus, Champion demonstrates no deficiency of appellate counsel or resulting prejudice. *See Sanders*, 373 U.S. at 19. Accordingly, Claim Four will be dismissed.

### E. Claim Five

In Claim Five, Champion contends that counsel rendered ineffective assistance "as to the weapons possession" charges because "[t]he weapons were found in the trunk and

not in close proximity of [Champion]."[8] (§ 2255 Mot. 7.) Champion further contends that "[he] did not have constructive possession of the weapons found." (*Id.*)

As an initial matter, Champion's present allegations are contrary to his sworn statements during the Rule 11 plea colloquy and the Statement of Facts accompanying Champion's Plea Agreement. Specifically, in the Statement of Facts, Champion agreed that he "did knowingly and unlawfully transport and ship in interstate and foreign commerce stolen firearms, to wit: an HS Products .40 caliber semi-automatic pistol, model XD40, serial number US385578, knowing and having reasonable cause to believe that the firearms were stolen." (Statement of Facts ¶ 1.) During the Rule 11 plea colloquy, Champion affirmed that "to the best of [his] knowledge what's contained in [the] Statement of Facts [was] true and accurate." (Nov. 25, 2013 Tr. 12.) In light of Champion's sworn statements during the Rule 11 proceedings, absent extraordinary circumstances, Champion's instant statements to the contrary are "palpably incredible." *Lemaster*, 403 F.3d at 222 (citation omitted). Champion fails to demonstrate any such extraordinary circumstances. *See id.* at 221–22 (citations omitted). Because Champion fails to demonstrate any extraordinary circumstances, "the truth of [his] sworn statements made during [the] Rule 11 colloquy is conclusively established." *Id.* at 222. For this reason alone, Claim Five can be dismissed.

---

[8] The Court notes that Champion pled guilty to Count Two (transportation and shipment of stolen firearms in interstate and foreign commerce). (Indictment 2.) The other two counts of the three-count Indictment were as follows: possession of a firearm by a convicted felon (Count One) and possession of a firearm with an obliterated serial number (Count Three). (*Id.* at 1–2.)

Champion also fails to demonstrate any prejudice under *Strickland*. As discussed above, to establish prejudice, Champion must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. With respect to Champion's argument regarding his lack of possession of the firearms, to establish actual possession, the Government must "prove that the defendant voluntarily and intentionally had physical possession of the firearm." *United States v. Scott*, 424 F.3d 431, 435 (4th Cir. 2005). To establish constructive possession, the Government "must prove that the defendant intentionally exercised dominion and control over the firearm, or had the power and the intention to exercise dominion and control over the firearm. Constructive possession of the firearm must also be voluntary." *Id.* at 436. In the context of contraband found in a vehicle, "[a] person has constructive possession over contraband when he has . . . control over the . . . vehicle in which it is concealed." *United States v. Hall*, 514 F. App'x 352, 355 (4th Cir. 2013) (alterations in original) (quoting *United States v. Armstrong*, 187 F.3d 392, 396 (4th Cir. 1999)) (concluding that where guns were recovered from a vehicle's trunk, the defendant, who "drove away with the guns," "had constructive possession of the guns").

Here, contrary to Champion's assertions, there is ample evidence that Champion, the driver of the vehicle, possessed and transported the firearms. Specifically, Champion was observed driving the vehicle, and during the traffic stop, upon searching the vehicle, firearms were recovered. (*See, e.g.*, Sept. 24, 2013 Tr. 11, 20.) Further, Champion admitted that he had purchased the firearms in Georgia in a "personal sale," and that after

this sale, he had possession of the firearms for approximately two weeks. (Sept. 24, 2013 Tr. 48–49.)

Therefore, counsel reasonably eschewed raising the challenge that Champion urges here regarding his possession of the firearms, and counsel cannot be faulted for raising a meritless argument. *See Moore*, 934 F. Supp. at 731. Furthermore, based on the overwhelming evidence of Champion's guilt, a rational defendant would not have risked proceeding to trial. *See Fugit*, 703 F.3d at 260–61.

Thus, Champion has failed to demonstrate any deficiency of counsel or resulting prejudice with respect counsel's decisions with respect to the "weapons possession" charges. *See Strickland*, 466 U.S. at 687, 691; *see also Hill*, 474 U.S. at 59. Accordingly, Claim Five will be dismissed.

### F.    Claims Six and Eight

In Claim Six, Champion contends that counsel provided ineffective assistance by "allowing a federal prosecution when the sole subject matter was state and premised on a traffic stop under state law." (§ 2255 Mot. 7.) Champion argues that "[t]he traffic stop was premised on an air freshener being around a rearview mirror and this subject matter is only a state charge. The federal government has not at least one ounce of cause to prosecute this case." (*Id.*) Similarly, in Claim Eight, Champion contends that counsel rendered ineffective assistance "under federal law's *Terry*[, *v. Ohio*, 392 U.S. 1 (1968),] stop decision" because "[u]nder federal law there is no violation contained within any statute that makes it a crime to wrap an air freshener around the rearview mirror to

eliminate odor." (*Id.* at 8.) Champion argues that "[t]his is solely a crime under state not federal law[;] separation of power issue." (*Id.*)

Champion is incorrect. Although the Virginia State trooper was required to have a valid legal basis to stop Champion's vehicle, *see Whren v. United States*, 517 U.S. 806, 819 (1996), the fact that the traffic stop was initiated based on probable cause of a state traffic violation does not foreclose federal charges for federal crimes discovered during the course of the traffic stop. Because Champion's claims regarding the lack of federal jurisdiction over his case lack merit, counsel reasonably eschewed the challenges that Champion urges here and cannot be faulted for failing to raise these meritless arguments. *See Moore*, 934 F. Supp. at 731. Furthermore, Champion fails to demonstrate that counsel's inaction regarding these meritless arguments resulted in any deficiency of counsel or resulting prejudice. *See Strickland*, 466 U.S. at 687, 691; *see also Hill*, 474 U.S. at 59. Accordingly, Claim Six and Claim Eight will be dismissed.

### G. Claim Seven

In Claim Seven, Champion contends that counsel provided ineffective assistance "as to the search of the vehicle's trunk." (§ 2255 Mot. 7.) Champion argues that the Virginia State trooper "never utilized Duffy, his drug detection canine," and "[t]his violates common sense because as an officer of the law[,] [t]he canine is in the best situation to alert on drugs."[9] (*Id.* at 8.)

---

[9] In Claim Seven, Champion also vaguely suggests that "[n]o federal law was violated," and "[t]he cause is to be held under federal laws since the Fed's prosecuted." (§ 2255 Mot. 8.) As set forth herein, contrary to Champion's assertion, a defendant, such as Champion, can be charged with any federal crimes that are discovered during the course of a traffic stop, even

As an initial matter, Champion's terse and conclusory allegations regarding counsel's ineffective assistance "as to the search of the vehicle's trunk," fail to demonstrate deficient performance or prejudice under *Strickland. Sanders*, 373 U.S. at 19. Moreover, contrary to Champion's assertion, counsel challenged the search of the vehicles' trunk in the Motion to Suppress, and the fact that the Virginia State trooper did not use his narcotics canine was an issue raised by Champion's counsel at the hearing on Champion's Motion to Suppress. (*See, e.g.*, Sept. 24, 2013 Tr. 21, 33, 37.)

At the hearing, the Virginia State trooper, who works with a narcotics canine, testified that "[i]f [the officers] smell [marijuana], [they] don't run the dog," and that is "[the department's] protocol." (Sept. 24, 2013 Tr. 21.) Further, one of the other occupants of the vehicle admitted "that they had smoked marijuana inside the vehicle." (Sept. 24, 2013 Tr. 43–44.) Based on this evidence and other evidence presented at the hearing, the Court denied Champion's Motion to Suppress. Champion fails to articulate any other challenges he believes counsel should have pursued regarding the "search of the vehicle's trunk." (*See* § 2255 Mot. 7–8.)

Thus, for these reasons, Champion has failed to demonstrate any deficiency of counsel or resulting prejudice with respect to counsel's decision's regarding challenges to the search of the vehicle's trunk. *See Strickland*, 466 U.S. at 687, 691; *see also Hill*, 474 U.S. at 59. Accordingly, Claim Seven will be dismissed.

---

when the traffic stop was initially based on probable cause of a state traffic violation. *See supra* Part II.F.

## III. CONCLUSION

For the foregoing reasons, Champion's § 2255 Motion (ECF No. 65) will be denied. The action will be dismissed. A certificate of appealability will be denied.

An appropriate Order shall issue.

/s/

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: Sept. 24, 2019
Richmond, Virginia